## No. 12,520.

PEOPLE EX REL. COLORADO BAR ASSOCIATION *v.* WINOGRAD.

(287 Pac. 864)

Decided May 5, 1930.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. CHARLES ROACH, Deputy, Mr. OLIVER DEAN, Assistant, for petitioner.

Mr. SAMUEL WINOGRAD, pro se.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

ON complaint made to the Committee on Grievances of the Colorado Bar Association, it—acting under our rules —investigated certain alleged misconduct of respondent and recommended proceedings against him. We referred its report to the Attorney General, with directions to proceed. Thereafter, on leave of court, he filed his petition containing five specific charges, and praying that respondent be required to show cause "why he should not be prohibited from further practicing as an attorney at law in the courts of this state, or why he should not be otherwise disciplined as the court shall determine." Re-

spondent thereupon answered, and one of the Justices of this court was directed to hear the evidence. This he did March 17, 1930. No evidence was offered as to one of the charges, and that on another was brief, unsatisfactory, and in the sharpest conflict. The three remaining we designate as the Flood & Conklin, Price, and Gonzales complaints, respectively.

1. The Flood & Conklin charge is that Winograd received a collection of $127.95 for these people, which he made at $10 per month, remitted irregularly and finally not at all; ignored repeated inquiries, made false statements, and only finally settled when forced. It is certain from the evidence that Winograd was grossly negligent in keeping his accounts and reporting and remitting. It is certain he made false statements. Some of these must have been intentional, others may have been due to ignorance arising from negligence. While he does not now admit all the Attorney General charges, he has in the past admitted all of it, and it is all established, save his receipt of one $10 check. He did not settle until forced.

2. Price had a claim of $253.84 on which he was entitled to a mechanic's lien. He employed Winograd, who also owed him, to collect. He believed, from what his attorney said, that suit had been started. When he found it had not been, and was advised—erroneously as it turned out—that the delay had deprived him of his lien, he transferred the business to another lawyer, who recovered the full amount. We think respondent willfully deceived Price, but, if he did not, he neglected his business and abused his confidence.

3. Gonzales, and one Domingues, were guilty of grand larceny and employed Winograd to defend them in the district court of Adams county. They made separate contracts and each gave him $20 to settle the civil liability arising from their theft, and paid him certain fees. The Gonzales payment was $150, which Winograd signed a written contract to refund "in the event a conviction carrying a penitentiary sentence is had against defend-

ant.'' Such a conviction was had but he did not refund, and four months after sentence gave the wife of Gonzales his note for said total sum of $170, due August 7, 1928. He has never made a payment thereon. As to the $20, Winograd was, of course, a trustee. There is no defense to his appropriation of that money. He admits the obligation to pay the $150 and says he will pay when able. He says, however, there is no moral obligation, that the claim is purely legal; that when he made the contract it had been agreed between himself and Gonzales and Domingues, and their families and friends, that Domingues was to plead guilty to grand larceny and Gonzales to petit larceny; and that he had such an agreement with the deputy district attorney; that when the pleas were entered the wife of Domingues made such a scene in court that her husband withdrew his plea of guilty, entered a plea of not guilty, was convicted, and sent to the penitentiary. Thereupon the district attorney refused to take the plea of guilty of petit larceny from Gonzales who, since he had no defense, was obliged to plead guilty to grand larceny. In other words, that these men and their families made it impossible for Winograd to save Gonzales from the penitentiary. It was clear the transaction occurred about as Winograd claims. Of course the misconduct or bad faith of Domingues and his wife constitutes no moral defense to the debt due from Winograd to Gonzales. There may, or may not, have been an agreement that Winograd should keep the $150 separate and intact. That was his only certain method of keeping his contract. Not having done so, he should have made every possible effort to repay promptly, and he offers no satisfactory proof that he did.

The foregoing statement of facts was furnished respondent and the Attorney General, who appeared before the court on March 28, 1930, explained orally their respective theories of the evidence, and stipulated then that the cause should be thus finally submitted without further testimony, transcript or argument.

The court now finds respondent guilty of unprofessional conduct and orders that he be suspended, indefinitely, from the practice of his profession.

MR. JUSTICE BUTLER thinks the suspension should be limited to one year, otherwise all the Justices concur.